**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PAULINA F. ZUNINO, DMD, LLC, on behalf of itself and all others similarly situated, | ) ) ) | |
| | ) | 2:20-cv-01260 |
| Plaintiff, | ) ) | Chief Judge Mark R. Hornak |
| v. | ) ) | |
| SENTINEL INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

In this case, Plaintiff Paulina F. Zunino, DMD, LLC, a licensed dental office located in Pennsylvania, alleges that its commercial property insurer, Defendant Sentinel Insurance Company, wrongfully denied Plaintiff's claims for business losses that Plaintiff sustained due to the COVID-19 pandemic and/or government orders issued to mitigate the COVID-19 virus's spread (referred to by Plaintiff and herein as the "Mandated Shutdown Rules"). (ECF No. 51, at 2–3, 17–19.) Defendant has filed a Motion to Dismiss all claims. (ECF No. 55.)

Plaintiff's claims and supporting factual allegations—including the terms of Plaintiff's insurance policy with Defendant ("the Policy")—the arguments that Defendant has advanced in its Motion to Dismiss, and the arguments that Plaintiff has advanced in opposing the Motion are all substantially similar to the claims, factual allegations, and arguments advanced by the parties in three other COVID-19 business interruption insurance matters before this Court[1] and in a multitude of actions in state and federal courts. For the reasons explained in this Court's Opinions

---

[1] Those cases are *In re: Erie COVID-19 Business Interruption Protection Insurance Litigation* (No. 1:21-mc-1), a multidistrict litigation (MDL); *Hirschfield-Louik v. Cincinnati Insurance Co.* (No. 2:20-cv-816); and *Taiclet v. Transportation Insurance Co.* (No. 2:20-cv-1552).

1

as to two of those matters before the Court and as highlighted below, the Court GRANTS Defendant's Motion to Dismiss. *See* Opinion, *In re: Erie COVID-19 Business Interruption Protection Insurance Litigation*, No. 21-mc-1 (W.D. Pa. Oct. 14, 2022) (hereafter "Erie Opinion"); Opinion, *Hirschfield-Louik v. Cincinnati Ins. Co.*, No. 20-cv-816 (W.D. Pa. Oct. 14, 2022) (hereinafter "Hirschfield-Louik Opinion").

At the times relevant to this litigation, Plaintiff's commercial property insurance Policy with Defendant provided that "[Defendant] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations . . . caused by or resulting from a Covered Cause of Loss." (ECF No. 51-1, at 28.) "Covered cause of loss" is defined as "risks of direct physical loss unless the loss is: [] excluded . . . or [] limited." (*Id.* at 29.) Under the Policy, when "direct physical loss of or damage to" the policyholder's property occurs as a result of a covered cause of loss, the policyholder may be reimbursed for loss of business income, and extra expenses incurred, as a result of suspension of the policyholder's operations during the "period of restoration" in which the affected property is repaired, rebuilt, or replaced. (*See id.* at 37–38, 51.) Further, when "direct physical loss of or damage to" property other than the policyholder's property occurs, the policyholder may be entitled to recover business income losses resulting from that impact to other property under the policy's "civil authority" and "dependent properties" provisions. (*See id.* at 38–39.) The policy excludes coverage for "[t]he enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling[,] or remediation of property due to contamination by pollutants and contaminants or due to the presence, growth, proliferation, spread of any activity of fungi, wet or dry rot, bacteria[,] or virus." (*Id.* at 34–35 (internal quotation marks omitted).)

As a result of the Mandated Shutdown Rules issued in response to the COVID-19

pandemic, on March 13, 2020, Plaintiff closed its property "for provision of elective dental procedures," and on June 1, 2020, Plaintiff reopened in a limited capacity "to provide clinically necessary treatment in cases of non-urgent and non-emergent care." (ECF No. 51, at 17.) "On or about March 20, 2020, Plaintiff provided oral notice to Defendant[] of its claim for the interruption to its business." (*Id.*) Defendant denied Plaintiff's claim for coverage. (*Id.*) Plaintiff then filed this action, in which Plaintiff seeks a declaratory judgment that its business interruption losses are covered under the policy and relief for Defendant's alleged breach of contract in denying Plaintiff's insurance claim. (*Id.* at 24–26.)[2]

On October 25, 2021, Defendant filed the pending Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 55) and a brief in support of its Motion (ECF No. 56). Plaintiff filed its Brief in Opposition to the Motion to Dismiss on December 6, 2021 (ECF No. 61), and Defendant filed its Reply Brief on January 7, 2022 (ECF No. 65). Oral argument as to the Motion to Dismiss occurred on May 16, 2022 (ECF No. 78).[3] The parties have also filed various Notices of Supplemental Authority (ECF Nos. 72, 80, 81) while the present Motion to Dismiss has been pending.

The parties rely on Pennsylvania law in their briefing on the Motion to Dismiss. (ECF Nos. 56, at 12 n.5; 61, at 10.) The Court agrees that Pennsylvania insurance contract interpretation law

---

[2] Plaintiff seeks to assert these claims individually and as a class action on behalf of "[a]ll policyholders in the United States who purchased commercial property coverage, including business or interruption income (and extra expense) coverage from Defendant[] and who have been denied coverage under their policy for lost business income after being ordered by a governmental entity, in response to the COVID-19 pandemic, to shut down or otherwise curtail or limit in any way their business operations." (ECF No. 51, at 22.) Defendant has also moved to dismiss Plaintiff's class action claims, in a separate Motion (ECF No. 57) that the Court dismisses without prejudice as moot, as noted in this Memorandum Order.

[3] The Court combined the oral argument on the Motion to Dismiss in this case with oral argument on the Motions to Dismiss in *In re: Erie*, *Hirschfield-Louik*, and *Taiclet*, because those Motions all involve facts and issues of law common with, or at least similar to, those involved here. (ECF No. 67.) At oral argument, Plaintiffs in the *Zunino*, *In re: Erie*, *Hirschfield-Louik*, and *Taiclet* actions argued as a group, as did Defendants in all of those actions, and the parties identified for the Court any arguments that pertained only to specific actions.

applies to this case. *See* Hirschfield-Louik Opinion, at 11–15. When a district court applies a particular jurisdiction's substantive law, "[i]n the absence of a definitive ruling by [the jurisdiction's] highest court, [the district court] must predict how that court would rule if faced with the issue." *Lupu v. Loan City, LLC*, 903 F.3d 382, 389 (3d Cir. 2018). "In so doing, [the district court] must look to decisions of [] intermediate appellate courts [within that jurisdiction], of federal courts interpreting that [jurisdiction's] law, and of other [jurisdictions' highest] courts that have addressed the issue, as well as to analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the [jurisdiction] would decide the issue at hand." *Id.*

The Pennsylvania Supreme Court has not yet decided a COVID-19 business interruption insurance case—in which a key issue is the meaning of the requirement in commercial property insurance policies, including the policy Plaintiff had with Defendant, of "direct physical loss of or damage to" property—so the Court must predict how the Pennsylvania Supreme Court would decide such a case. While decisions from Pennsylvania's intermediate appellate court, the Pennsylvania Superior Court, would be instructive to the Court in this task, the Superior Court also has not yet decided a COVID-19 business interruption insurance case.

As explained in *In re: Erie* and *Hirschfield-Louik*, while the Third Circuit, within which Pennsylvania is located, also has not yet decided a COVID-19 business interruption insurance case,[4] it has issued precedential and non-precedential decisions in cases involving an insurance claim for expenses incurred from the abatement of asbestos-containing materials, *see Port Auth.*

---

[4] The Third Circuit heard argument in fourteen consolidated COVID-19 business interruption insurance cases on September 28, 2022, *Rhonda Wilson v. USI Insurance Services LLC*, No. 20-3124, ECF No. 142, at 2 (Sept. 8, 2022), and that court has stayed the resolution of other similar appeals that have not been consolidated with those set to be argued pending the resolution of the consolidated cases before it or until further order of that court, *Wilson*, No. 20-3124, ECF No. 43, at 2 (April 6, 2021).

*of NY & NJ v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002), and an insurance claim stemming from vacating of a home in which the water supply was contaminated with *E. coli* bacteria, *see Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 826 (3d Cir. 2005).[5] In those cases, the Third Circuit concluded that "direct physical loss of or damage to" property usually requires "a distinct, demonstrable, and physical alteration" of the property, and when the cause of the asserted loss or damage is "unnoticeable to the naked eye," it only constitutes direct physical loss or damage if the "function [of the property] is nearly eliminated or destroyed, or the structure is made useless or uninhabitable." 311 F.3d at 235–36. Several federal district courts within the Third Circuit that have decided COVID-19 business interruption insurance cases have dismissed claims like Plaintiff's claims here, concluding based on *Port Authority* and *Hardinger* that neither the COVID-19 virus nor the Mandated Shutdown Rules cause "direct physical loss of or damage to" property. Hirschfield-Louik Opinion, at 21–22 (collecting cases).

The outcome of those cases within the Third Circuit is consistent with the majority of decisions in COVID-19 business interruption insurance cases throughout the country, which, although not always applying Pennsylvania law, have concluded under the substantially similar law of other jurisdictions that neither the COVID-19 virus nor the Mandated Shutdown Rules are a covered cause of loss under policies like the Policy issued to Plaintiff here. As the Court observed in *Hirschfield-Louik*, every federal Court of Appeals that has decided a COVID-19 business interruption insurance case has concluded that policyholders cannot recover business losses stemming from the virus or the Mandated Shutdown Rules under policies similar to the one at issue here. Hirschfield-Louik Opinion, at 22–23. At least several of those Courts of Appeals

---

[5] While *Port Authority* involved New York and New Jersey law, and not Pennsylvania law, the panel of the Third Circuit in *Hardinger*, which involved Pennsylvania law, relied on *Port Authority* because the panel stated, "[w]e find nothing . . . in New York, New Jersey, or Pennsylvania law that would cause us to disregard *Port Authority* under Pennsylvania law." *Hardinger*, 131 F. App'x at 826.

decisions applied the same definition of "direct physical loss of or damage to" property that the Third Circuit announced in *Port Authority* and applied in *Hardinger*, with some applying an even narrower definition such that "a distinct, demonstrable, and physical alteration" of the property is required. *See* Erie Opinion, at 39.

The Courts of Appeals' dismissal of the types of claims Plaintiffs assert in this case aligns with the majority of decisions, by both state courts and federal courts, that have been issued in COVID-19 business interruption insurance litigation since the COVID-19 pandemic began. *See COVID-19 Case Tracker*, Law360 Insurance Authority (Sept. 6, 2022), https://www.law360.com/insurance-authority/covid-map; *COVID Coverage Litigation Tracker*, Univ. of Penn. Carey Law School: Insurance Law Center, https://cclt.law.upenn.edu/ (last visited Oct. 13, 2022).

In the Erie Opinion, the Court concluded that the leading cases that it explored in that Opinion—decisions by federal Courts of Appeals and state appellate courts applying the law of the nine jurisdictions involved in the MDL, which included Pennsylvania—were soundly decided and are reliable indicators of the path of the decisional law which this Court should follow as to how the highest courts of the jurisdictions involved in the MDL, including the Pennsylvania Supreme Court, would decide the issues raised in the MDL actions—most importantly, the meaning of "direct physical loss of or damage to" property and application of that phrase in the COVID-19 business interruption insurance litigation context. Erie Opinion, at 38–42.

The Court also concluded that the plaintiffs in the *In re: Erie* actions had not pleaded factual allegations or advanced legal arguments that were materially different from such as pleaded or advanced by the plaintiffs in the decisions the Court explored in its Erie Opinion, and thus that those decisions were highly instructive in the Court's analysis of the MDL plaintiffs' claims and

the Motion that sought to dismiss them. *Id.* at 42–43. Applying those decisions, the Court concluded that the plaintiffs in the MDL had not plausibly pleaded that their properties experienced "direct physical loss of or damage" due to the COVID-19 virus or the Mandated Shutdown Rules. *Id.*; *see also* Hirschfield-Louik Opinion, at 25–29.

Specifically, like the MDL plaintiffs, Plaintiff in this case primarily advanced the claim that the COVID-19 virus is a covered cause of loss because it is a physical substance that caused "direct physical loss of or damage" to Plaintiff's properties. To support that claim, Plaintiff pleaded, as plaintiffs in the MDL pleaded, that COVID-19 virus particles were physically present on their properties,[6] that the particles altered the properties by bonding to surfaces and "becom[ing] part of th[ose] surface[s]," and that according to various studies, COVID-19 virus particles remain stable, transmittible, and/or infectious in air and on surfaces for a certain length of time, and according to one of those studies for up to nine days on certain surfaces. (ECF No. 51 ¶¶ 51–55, 85.)

But for the reasons that this Court explained in *In re: Erie*, those allegations cannot carry the day for Plaintiff. Even considering on their own and accepting as true Plaintiff's allegations that the virus particles can "remain infectious on inanimate surfaces at room temperature for up to 9 days," (ECF No. 51 ¶ 55), and in that way "cause[] a physical change to the surface" (ECF No.

---

[6] In describing the MDL CAC in *In re: Erie*, the Court noted that the facts that the plaintiffs had pleaded in an effort to show that COVID-19 was physically present on their particular properties—allegations that employees and/or customers of some of the plaintiffs had tested positive for or been exposed to COVID-19—were barely sufficient (if sufficient at all) to plausibly make that showing because they did not plausibly show that any person contracted COVID-19 from, or spread COVID-19 virus particles to, the plaintiffs' properties. There thus was no nexus plausibly shown between the fact that those individuals were infected and the COVID-19 virus actually being present on the property. Here, Plaintiffs have not gone that far; instead, Plaintiffs have only alleged that the COVID-19 virus was "ubiquitous," and that "[b]ased upon the available data, Plaintiffs believe and aver that COVID-19 was present on the premises of their Covered Properties by the time the Mandated Shutdown Rules were announced." (ECF No. 51 ¶¶ 82, 86.) These allegations are conclusory and insufficient to plausibly show that COVID-19 virus particles were present on Plaintiffs' properties, which constitutes an additional central shortcoming with Plaintiffs' allegations beyond those that the Court focuses on here.

51 ¶ 53), the natural plausible inference from those allegations is that the virus particles dissipate on their own, after those days have passed, without any human intervention and without any ongoing harm to physical property. Further, reading Plaintiff's allegations as a whole requires the Court to accept as true Plaintiff's further assertion that "some cleaning products will both inactivate and remove COVID-19 from surfaces." (ECF No. 51 ¶ 54.) This assertion demonstrates that the virus particles can be readily removed, thus returning the property to its original condition, as soon as the property owners themselves undertake simple remedial actions in advance of its natural dissipation. Plaintiff's pleadings as to (1) the relatively short amount of time that COVID-19 virus particles may alight and then remain on property on which they are found and (2) the ability for property owners themselves to use readily available cleaning products to "inactivate and remove" the virus particles from surfaces do not plausibly show that COVID-19 causes "direct physical loss of or damage to" property, as such standard was described in *Port Authority*, 311 F.3d at 235–36; rather, the pleadings show that COVID-19 is distinguishable from other physical substances that *can* cause such loss or damage despite not physically altering property. *See* Erie Opinion, at 44–47 (contrasting COVID-19 virus particles that have alighted on surfaces from gasoline that has infiltrated the soil underneath a property, asbestos fibers that have been released from a structure, *E.coli* contamination of a property's water supply, and ammonia that has been released into a property).

As noted above, in this case, the terms of Plaintiff's insurance Policy with Defendant, Plaintiff's factual allegations, and Plaintiff's legal arguments are substantially similar to those in *In re: Erie* and in *Hirschfield-Louik*. Thus, for the reasons explained in the Opinions as to the Motions to Dismiss in those cases, Plaintiff has not plausibly pleaded that the COVID-19 pandemic caused "direct physical loss of or damage to" its property such that Plaintiff was entitled to

coverage for its business losses. *See* Erie Opinion, at 42–53; Hirschfield-Louik Opinion, at 25–29. The Court further concludes that given the basis for the Court's decision here, the Plaintiff could not amend their complaint to allege additional facts or law that would plausibly show that they are entitled to such coverage. Thus, any amendment to the Complaint would be futile. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that leave to amend is properly denied where "any attempted additional amendment of [the] pleading would be futile"); *see also LabMD Inc. v. Boback*, 47 F.4th 164, 192–93 (3d Cir. 2022) (stating that a "District Court [is] not obligated to grant leave to amend of its own accord" in non-civil rights cases).

Accordingly, Defendant's Motion to Dismiss (ECF No. 55) is GRANTED, and these actions will be dismissed with prejudice.[7]

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: October 14, 2022
cc:     All counsel of record (via CM/ECF)

---

[7] The Court also dismisses without prejudice Defendant's Motion to Dismiss Plaintiff's Nationwide Class Action Claims (ECF No. 57) as moot.

9